**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND and ZURICH AMERICAN INSURANCE COMPANY,**

**Plaintiffs,**

**v.**

**HUFFMAN CONSTRUCTION, LLC, and JAMES KEITH HUFFMAN,**

**Defendants.**

**Case No.:** 4:26-cv-1386

## VERIFIED COMPLAINT FOR INDEMNITY AND EQUITABLE RELIEF

Fidelity and Deposit Company of Maryland ("F&D") and Zurich American Insurance Company ("Zurich") (F&D and Zurich collectively, the "Plaintiffs"), by and through the undersigned counsel, files this Verified Complaint for Indemnity and Equitable Relief against Huffman Construction, LLC and James Keith Huffman (collectively, the "Defendants"), and shows the Court the following:

## PARTIES, JURISDICTION AND VENUE

1. Defendant Huffman Construction, LLC ("Huffman Construction") is a Missouri Limited Liability Company whose principal place of business is located at 1450 Rowe Parkway, Poplar Bluff, in Butler County, Missouri.

2. Huffman Construction may be served via Registered Agent Vincent D. Vogler, Sr., 11756 Borman Drive, Suite 200, St. Louis, Missouri 63146.

3. Upon information and belief, the Members of Huffman Construction are James Keith Huffman and Sherry D. Huffman, who are domiciled in the State of Missouri and are citizens

of Missouri. There are no other Members of Huffman Construction. Therefore, Huffman Construction is a citizen of Missouri.

4. Defendant James Keith Huffman ("Huffman") is an individual domiciled in the State of Missouri and is a citizen of Missouri.

5. Huffman may be served at 626 South 6th Street, Poplar Bluff, Missouri 63901-7327.

6. Plaintiffs Fidelity and Deposit Company of Maryland and Zurich American Insurance Company are Illinois corporations with principal place of business in Schaumburg, Illinois.

7. This matter concerns an amount in controversy greater than $75,000.00, exclusive of interest and costs.

8. There is complete diversity of state citizenship between Plaintiffs (Illinois citizens) and Defendants (Missouri citizens).

9. Jurisdiction pursuant to 28 U.S.C. § 1332 in the United States District Court for the Eastern District of Missouri is proper.

10. Personal jurisdiction and venue are also proper in the United States District Court for Eastern District of Missouri, pursuant to 28 U.S.C. § 105(a)(1) and 28 U.S.C. § 1391(b) because the Defendants reside in the Eastern District of Missouri, Eastern Division.

## FACTS COMMON TO ALL COUNTS

11. On August 25, 2014, the Defendants executed a General Indemnity Agreement ("Indemnity Agreement") in favor of Plaintiffs. A true and accurate copy of the Indemnity Agreement is attached hereto as **Exhibit A**.

12. The Indemnity Agreement was executed by Defendants in consideration of the Plaintiffs' execution of one or more Bonds on behalf of any of the Defendants.

13. Paragraph 2 of the Indemnity Agreement provides:

> Indemnitors shall exonerate, indemnify, and hold Surety harmless from any and all liability and Loss, sustained or incurred, arising from or related to: (a) any Bond, (b) any Claim, (c) any Indemnitor failing to timely and completely perform or comply with this Agreement, (d) Surety enforcing this Agreement or (e) any act of Surety to protect or procure any of Surety's rights, protect or preserve any of the Surety's interests, or to avoid, or lessen Surety's liability or alleged liability. The liability of Indemnitors to Surety under this Agreement includes all Claims made on Surety, all payments made, Loss incurred, and all actions taken by Surety under the Good Faith belief that Surety is, would be or was liable for the amounts paid or the actions taken, or that it was necessary or expedient to make such payments or take such actions, whether or not such liability, necessity or expediency existed. Indemnitors shall promptly; upon demand, make payment to Surety as soon as liability or Loss exists, whether or not Surety has made any payment. An itemized statement of Loss, sworn to by any officer of Surety, or the voucher or other evidence of any payment, shall be *prima facie* evidence of the fact, amount and extent of the liability of Indemnitors for such Loss. Indemnitors shall promptly, upon demand, procure the full and complete discharge of Surety from all Bonds and all liability in connection with such Bonds. If Indemnitors are unable to obtain discharge of any or all such Bonds within the time demanded, Indemnitors shall promptly deposit with Surety an amount of money that Surety determines is sufficient to collateralize or pay any outstanding bonded obligations.

14. The Indemnity Agreement provides that the term "Loss" means

> [A]ll premiums due to Surety and any and all liability, loss, Claims, damages, court costs and expenses, attorneys' fees (including those of Surety), consultancy fees, and all other costs and expenses, including but not limited to any additional or extra-contractual damages arising from Surety's Settlement of any Claim. Pre-judgment and post-judgment interest shall accrue from the date of any payment made by Surety with respect to any of the foregoing at the maximum default rate permitted by law." ¶ 30.

15. Additionally, the Indemnity Agreement provides under Paragraph 4:

> Indemnitors agree to promptly deposit with Surety, on demand, an amount of money that the Surety determines is sufficient to fund any liability or Loss. Such funds may be used by Surety to pay Loss or may be held by Surety as collateral against potential future Loss.

> Any remaining funds held by Surety after payment or all sums due to Surety under this Agreement shall be returned upon the complete release and/or discharge of Surety's liability under all Bonds.

16. Paragraph 5 of the Indemnity Agreement provides that:

> Indemnitors pledge, assign, transfer and set over to Surety, the Collateral, as collateral to secure the obligations in this Agreement, whether incurred before or after the execution of this Agreement, including a license to use the Collateral, without cost, to perform or discharge Surety's obligations under any Bond or Bonded Contract. This pledge and assignment becomes effective on the date of this Agreement, or the earliest date allowable by law.

17. The term "Collateral" is defined in the Indemnity Agreement as

> [A]ll right, title and interest of one or more Indemnitor in the following, wherever located, and whenever acquired or arising: (a) all Bonded Contracts; (b) all goods (including equipment, machinery, tools and materials), general intangibles, and inventory, to the extent not subject to a prior perfected security interest; (c) all subcontracts and purchase orders arising under any Bonded Contract, and all surety bonds supporting such subcontracts and purchase orders; (d) all sums which are or may become payable in connection with any Bonded Contract and all other contracts in which any Indemnitor has an interest; (e) all intellectual property (including proprietary software) necessary or required to perform any Bonded Contract; (f) any facilities or plants necessary or required to perform any Bonded Contract; and (g) any real or personal property, the improvement of which is secured by any Bond.

18. Paragraph 11 of the Indemnity Agreement also contains the following:

> Indemnitors shall promptly provide Surety with any and all information and documentation concerning the business or financial situation of any Indemnitor or any subsidiary, affiliate or Related Entity of any Indemnitor, as requested by Surety. Indemnitors shall furnish on demand, and Surety shall have the right to access, examine and copy the books, records and accounts of Indemnitors and of any entity under the control of any Indemnitor, at no cost to Surety.

19. Paragraph 16 the Indemnity Agreement further includes that:

> Indemnitors acknowledge that the failure of Indemnitors, collectively or individually, to perform or comply with any provision of this Agreement shall cause irreparable harm to Surety for which Surety has no adequate remedy at law. Indemnitors agree that Surety shall be entitled to injunctive relief and/or specific performance, and Indemnitors waive any claims or defenses to the contrary.

20. As consideration for the execution of the Indemnity Agreement, Plaintiffs executed Payment Bond No. 09127560 and Performance Bond No. 09127560 (the "Bonds") naming Huffman Construction, as principal, in connection with its construction of the U.S. Army Corps of Engineers ("USACE") project known as the Grand Prairie Pumping Project located in DeValls Bluff, Arkansas (the "Project"). A true and accurate copy of the Bonds are attached hereto as **Exhibit B**.

21. On or around March 31, 2020, USACE terminated Huffman Construction's prime contract for the Project for cause and made demands to Plaintiffs under the Performance Bond.

22. Huffman Construction asserted that USACE wrongfully terminated the contract.

23. Huffman Construction and the USACE litigated their disputes before the Armed Services Board of Contract Appeals (the "USACE Case").

24. Upon request, Plaintiffs facilitated Huffman Construction's appeal of the termination by advancing payments for its attorney's fees and costs in connection with the USACE Case, subject to a full reservation of rights, including its right to be reimbursed for all amounts paid to Huffman Construction's counsel.

25. Plaintiffs entered into a Tolling Agreement with the Defendants so Plaintiffs could temporarily forebear from filing suit to enforce its indemnity rights and allow Huffman

Construction to focus its efforts on prosecuting the appeal. A true and accurate copy of the Tolling Agreement and an Amendment thereto is attached hereto as **Exhibit C**.

26. A decision in the USACE Case is pending.

27. Plaintiffs requested financial information regarding the Defendants' assets and liabilities on multiple occasions.

28. Defendants failed to provide the Plaintiffs with any documentation, let alone any independently verifiable records, concerning their financial situation.

29. The Defendants' failure to provide Plaintiffs with the requested documentation has impeded Plaintiffs' evaluation of the Defendants' capacity to reimburse the Plaintiffs for their losses, costs, and expenses.

30. Plaintiffs retained Nicholson Professional Consulting, Inc. ("NPCI") and funded an account (the "Account") with the amount of $1,440,000.00 from which $1,424,373.92 in disbursements were made to fund Huffman Construction's payables on the Project, attorneys' fees and consultants' costs for prosecution of Huffman Construction's appeal of the USACE termination, consultants' fees and expenses for NPCI, and other costs relating to the Project and disputes between the USACE and Huffman Construction. A statement containing a list of the disbursements is attached hereto as **Exhibit D** (the "Account Statement"),

31. In addition to the payments listed in Exhibit C, Plaintiffs made a payment in the amount of $600,000 to H & H Electric, Inc. ("H&H") to resolve its claims and demands under the Payment Bond.

32. In addition to the disbursements from the Account list in Exhibit C, and the payment to H&H, Plaintiffs made payments totaling $1,710,712.38 to fund Huffman Construction's payables on the Project, attorneys' fees and consultants' costs for prosecution of Huffman

Construction's appeal of the USACE termination, consultants' fees and expenses for NPCI, and other costs relating to the Project and disputes between the USACE and Huffman Construction. A table containing a summary of these additional payments made by the Plaintiffs in connection with the default or failure to perform on the Project by Huffman Construction is attached hereto as **Exhibit E**.

33. In total, Plaintiffs have incurred losses, costs and expenses of not less than $3,735,086.30 as a result of the issuance of the Bonds and Huffman Construction's the default or failure to perform on the Project.

34. On May 29, 2026, Plaintiffs made an indemnity and collateral demand on the Defendants in which it demanded under the terms of the Indemnity Agreement that the Defendants indemnify and reimburse the Plaintiffs for its loss, costs, expenses, and fees relative to the Bonds in the sum of $3,728,342.17, and to deposit cash or other collateral in the amount of $17,000,000.00 (the "Indemnity and Collateral Demand"). A true and accurate copy of the Indemnity and Collateral Demand is attached as **Exhibit F**.

35. Additionally, Plaintiffs once more demanded that the Defendants provide financial records, including but not limited to, their books, records, and accounts.

36. Despite demand, Defendants have failed and refused to reimburse the Plaintiffs.

37. Despite demand, Defendants have failed and refused to post the collateral demanded by the Plaintiffs.

38. Despite demand, Defendants have failed and refused to provide financial records.

## <u>COUNT I – CONTRACTUAL INDEMNIFICATION</u>

39. Plaintiffs restate and reallege the foregoing allegations above as if fully set forth herein.

40. Under the terms of the Indemnity Agreement, Defendants are liable to Plaintiffs for, but not limited to:

a. any and all liability, loss, Claims, damages, court costs and expenses, attorneys' fees, consultancy fees, and all other costs and expenses, including but not limited to any additional or extra-contractual damages arising from Plaintiffs' Settlement of any Claim, and

b. pre-judgment and post-judgment interest accrued from date of any payment made by Plaintiffs at a maximum default rate permitted by law.

41. Pursuant to the Indemnity Agreement, Plaintiffs are entitled to a judgment against the Defendants, jointly and severally, for all losses, costs, expenses, attorneys' fees, and interest for which the Defendants are obligated to indemnify Plaintiffs, in an amount currently not less than $3,735,086.30, together with all additional amounts incurred from the date of filing through the entry of final judgment.

## COUNT II – SPECIFIC PERFORMANCE: COLLATERAL SECURITY

42. Plaintiffs restates and realleges the foregoing allegations above as if fully set forth herein.

43. The collateral security provisions of the Indemnity Agreement are unique and specifically designed to protect Plaintiffs from having to expend their own funds on bond claims prior to resolution of liability.

44. Absent specific performance, Plaintiffs will be deprived of the benefit of their bargain, including their contractual right to immediate collateralization and preservation of pledged assets. A money judgment after the fact would not restore Plaintiffs' security position or provide adequate relief.

45. Accordingly, Plaintiffs have no adequate remedy at law to obtain the collateral security promised by Defendants in the Indemnity Agreement.

46. Therefore, Plaintiffs are entitled to an order for specific performance compelling the Defendants to immediately deposit $17,000,000.00 in collateral security.

**COUNT III – SPECIFIC PERFORMANCE: ACCESS TO FINANCIAL RECORDS**

47. Plaintiffs restate and reallege the foregoing allegations above as if fully set forth herein.

48. The Financial Statements, Books and Records provision contained in ¶ 11 of the Indemnity Agreement obligates the Defendants to provide Plaintiffs with any and all information and documentation concerning the business or financial situation of any Defendants.

49. Plaintiffs have repeatedly made a demand for Defendants' business and financial information and documentation.

50. Defendants have failed and refused to provide any such information or records.

51. Plaintiffs lack an adequate remedy at law in relations to the Defendants' breach of ¶ 11 of the Indemnity Agreement.

52. Defendants' material breach of ¶ 11 of the Indemnity Agreement has caused and continues to cause irreparable harm to Plaintiffs because, among other things, Plaintiffs are being deprived of their bargained for rights to access information that is vital to Plaintiffs' investigation and mitigation of its exposure to loss under the Bonds and/or Plaintiffs investigation and enforcement of the various obligations the Defendants' owe to Plaintiffs under the Indemnity Agreement.

53. Plaintiffs are entitled to an order for specific performance compelling the Defendants to immediately produce all records concerning their business and financial situation.

## COUNT IV – INJUNCTIVE RELIEF

54. Plaintiffs restate and reallege the foregoing allegations above as if fully set forth herein.

55. Plaintiffs are entitled to a temporary restraining order, preliminary and permanent injunctions to command Defendants (a) to deposit $17,000,000.00 in cash or other collateral satisfactory to Plaintiffs, which is the amount the Plaintiffs have determined is sufficient to fund the liability and loss it faces as a result of having issued the Bonds and (b) to deliver all verifiable financial records concerning the business or financial situation of each Defendant, including but not limited to, their books, records, and accounts.

**WHEREFORE,** Plaintiffs pray for a judgment in their favor and against Defendants as follows:

(a) In the amount of liability, loss, Claims, damages, court costs and expenses, attorneys' fees, consultancy fees, and all other costs and expenses, together with pre-judgment and post-judgment interest at the maximum rate allowed by law, that Plaintiffs have sustained and continues to sustain as a result of having executed Bonds on behalf of Huffman Construction and enforcing the Indemnity Agreement, in an amount to be shown more fully at trial or hearing or by motion but not less than $3,735,086.30;

(b) An entry of an injunction/judgment for specific performance requiring Defendants to deposit $17,000,000.00 to be held by Plaintiffs as collateral security and used to pay losses, costs, and expense incurred by Plaintiffs as a result of the bonded obligations;

(c) An entry of an injunction/judgment for specific performance requiring Defendants to produce all records concerning their business and financial situation; and

(d) For all other such relief as this Court deems just and proper.

Respectfully submitted this 28th day of August, 2026.


*/s/ Scott C. Williams*
Scott C. Williams, MO Bar No. 065682
MANIER & HEROD
1201 Demonbreun Street, Ste. 900
Nashville, TN 37203
Phone: (615) 244-0030
Fax: (629) 500-1137
swilliams@manierherod.com

*Counsel for Plaintiffs Fidelity and Deposit Company of Maryland and Zurich American Insurance Company*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **FIDELITY AND DEPOSIT COMPANY OF MARYLAND and ZURICH AMERICAN INSURANCE COMPANY,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**HUFFMAN CONSTRUCTION, LLC, and JAMES KEITH HUFFMAN,**<br><br>**Defendants.** | **Case No.:** 4:26-cv-1386 |

## VERIFICATION TO COMPLAINT

Fidelity and Deposit Company of Maryland and Zurich American Insurance Company file this Verified Complaint against Huffman Construction, LLC and James Keith Huffman, and show the Court the following:

Pursuant to 28 U.S.C. § 1746, I declare that:

1. I am over eighteen (18) years old and competent to give this verification. The statements herein are based on my personal knowledge, and if called as a witness, I would testify to the same.

2. I am employed as Senior Claims Professional for Fidelity and Deposit Company of Maryland and Zurich American Insurance Company ("Plaintiffs"). I am primarily responsible for handling the matters related to the bonds executed by Plaintiffs on behalf of Huffman Construction, LLC ("Principal"), including this matter, and have personal knowledge of the facts stated in this verification.

3. The facts stated in the Verified Complaint against Huffman Construction, LLC and James Keith Huffman are true and correct based on my personal knowledge.

4. The exhibits attached to the Verified Complaint, based upon my personal knowledge, are true, accurate and complete duplicates of the originals. The exhibits are records of the acts, events, conditions, and/or opinions described and were made at or near the time by, or from information transmitted by, a person with knowledge. The exhibits are business records which were kept in the course of a regularly conducted business activity, and it was the regular practice of that business to make the records, of which I am a custodian.

5. Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury that the foregoing is true and correct.

Executed on this 14 day of August, 2026.

**STEPHEN STACHOWSKI**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing is to be filed with the Summons, this the 28th day of August 2026.

*/s/ Scott C. Williams*

p