# EXHIBIT F

TERRY L. HILL, Retired
TOMMY C. ESTES
JOHN M. GILLUM ◊
SAM H. POTEET, JR.
DAVID J. DEMING
MARY PATY LYNN LEVAN
FRED C. STATUM III
JAMES H. TUCKER, JR.
SARAH HARDISON REISNER
JOHN W. BARRINGER, JR.
MICHAEL L. HAYNIE »
MICHAEL E. COLLINS ∞
SCOTT C. WILLIAMS ϒ
DAVID DROBNY
HEATHER H. DOUGLAS
ADRIENNE B. FAZIO π

◊ ALSO LICENSED IN NEW YORK
∞ ALSO LICENSED IN TEXAS AND NEW YORK
ϒ ALSO LICENSED IN MISSOURI AND VIRGINIA
» ALSO LICENSED IN FLORIDA
π ALSO LICENSED IN MISSISSIPPI, ALABAMA, AND THE DISTRICT OF COLUMBIA

LAW OFFICES
MANIER & HEROD
A TENNESSEE PROFESSIONAL CORPORATION

1201 DEMONBREUN STREET, SUITE 900
NASHVILLE, TENNESSEE 37203

TELEPHONE (615) 244-0030
FACSIMILE (629) 500-1137

(615) 742-9317
DIRECT DIAL NUMBER

cfarone@manierherod.com
E-MAIL ADDRESS

M. STEELE CANTEY λ
JENNA M. MACNAIR
DAVID A. HARRIS α
KATHY C. SO ϕ
CODY M. HENLEY Δ
S. MARC BUCHMAN Φ
GABI JACKSON
CATHERINE FARONE
WILLIAM GASS
RHOBERTA ORSLAND
JENNIFER SHERMAN SCHNALL ∞
MANUELA ESPINOSA
ZACHARY KURTZ

λ ALSO LICENSED IN GEORGIA
Δ ALSO LICENSED IN ARIZONA
Φ ALSO LICENSED IN ARKANSAS
α ONLY LICENSED IN GEORGIA, NORTH CAROLINA AND SOUTH CAROLINA
ϕ ONLY LICENSED IN GEORGIA

May 29, 2026

**Via Email & U.S. Mail**
Vincent D. Vogler Sr.
Attorney at Law
11756 Borman Drive, Suite 200
St. Louis, MO 63146
vdvazoffice@gmail.com

| | | |
|---|---|---|
| RE: | Surety: | Fidelity and Deposit Company of Maryland / Zurich American Insurance Company |
| | Bonds: | Performance Bond No. 09127560 and Payment Bond No. 09127560 |
| | Principal: | Huffman Construction, LLC |
| | Obligee: | The United States of America through the U.S. Army Corps of Engineers |
| | Contract No: | W912EQ-14-C-0028 |
| | Project: | Grand Prairie Pump Station |

Dear Mr. Vogler:

I am writing on behalf of Fidelity and Deposit Company of Maryland (the "Surety") in relation to your client's obligations under the General Indemnity Agreement (the "Indemnity Agreement"), dated August 18, 2014 and attached hereto as **Exhibit 1**. Huffman Construction, LLC ("Principal") and James Keith Huffman (collectively, the "Indemnitors") executed the Indemnity Agreement in favor of the Surety as a condition of the Surety issuing Performance Bond No. 09127560 (the "Performance Bond") and Payment Bond No. 09127560 (the "Payment Bond") (collectively, the "Bonds") on the Principal's behalf.

The purpose of this correspondence is to formally demand that the Indemnitors honor their contractual obligations under the Indemnity Agreement. As such, this correspondence constitutes the following:

(1) The Surety's demand that the Indemnitors immediately indemnify/reimburse the Surety for its loss, costs, expenses, fees, etc. relative to the Bonds, the sum of which currently exceeds $3,728,324.17;

(2) The Surety's demand that the Indemnitors immediately provide independently verifiable financial records concerning the business or financial situation of the Indemnitors, including, but not limited to, their books, records, and accounts; and

(3) The Surety's demand that the Indemnitors deposit cash or other collateral satisfactory to the Surety in the amount of $17,000,000.00, which is the amount the Surety has determined is sufficient to fund the liability and loss it faces as a result of having issued the Bonds.

**Please be advised that should the Indemnitors fail to perform their obligations under the Indemnity Agreement by June 19, 2026, the Surety will proceed to enforce its rights under the Indemnity Agreement through litigation.** The bases for the Surety's demands for indemnity, collateral, and independently verifiable financial records are detailed below.

**Background**

As you are aware, the U.S. Army Corps of Engineers ("USACE") terminated the Principal's contract (the "Bonded Contract") for the construction of the Grand Prairie Pumping Project (the "Project") in March 2020. The Principal disputes the termination and has appealed the USACE's decision to the Armed Services Board of Contract Appeals (the "ASBCA"), which held a seven-day hearing on the appeal in February 2025. Post-hearing briefing has now concluded, and we are awaiting the ASBCA's decision, which we expect will be issued before the end of this year.

To mitigate its loss in connection with the Bonds and the Project, the Surety facilitated the Principal's appeal of the termination by advancing payments for its attorneys' fees and costs in connection with the ASBCA proceeding, subject to a full reservation of rights, including its right to be reimbursed for all amounts paid to the Principal's counsel. The Surety also entered into a tolling agreement (the "Tolling Agreement"), a copy of which is attached hereto as **Exhibit 2**, so that it could temporarily forebear from filing suit to enforce its indemnity rights and allow the Principal to focus its efforts on prosecuting the appeal. Notably, the Tolling Agreement does not *require* the Surety to forbear from filing suit. Rather, it states, in pertinent part: "nothing prevents Surety from filing a lawsuit or other action against one or more of the Indemnitors prior to the Expiration Date."

The Surety has further refrained from demanding collateral prior to this letter in attempt to work collaboratively with the Indemnitors. The Surety has, however, requested financial information regarding the Indemnitors' current assets and liabilities on multiple occasions. The Surety first requested updated financial documentation from the Principal's litigation counsel over a year ago. Matt Willis and Leo Arnold advised that we should contact you to obtain the requested information. Our firm then sought documentation from you via phone and email in August 2025. I followed up on these requests on March 18, 2026, and you conveyed on March 24, 2026, that you would work with Mr. Huffman to provide updated information. Over two months have now

passed since your email, and the Indemnitors have yet to provide any documentation, let alone independently verifiable records, concerning their financial situation.

The Indemnitors' unresponsiveness to the foregoing requests for financial information has impeded the Surety's evaluation of the Indemnitors' capacity to reimburse the Surety for its losses, costs, and expenses, which at this juncture, exceed $3,728,324.17, and to collateralize it against the exposure to loss and liability that Surety continues to face in relation to USACE's potential claim under the Performance Bond, as well as the fees and expenses of defending such a claim. Thus, it is imperative that the Indemnitors provide a satisfactory response to this demand by June 19, 2026. If they fail to do so, the Surety shall immediately file suit to enforce its rights under the Indemnity Agreement.

**<u>The Indemnity Agreement</u>**

As set forth above, the Surety has incurred and faces exposure to incurring liability and loss as a result of issuing the Bonds on the Principal's behalf. The Indemnity Agreement jointly and severally obligates the Indemnitors to, among other things, (1) indemnify/reimburse the Surety in relation to any liability and loss, (2) provide access to independently verifiable financial records, and (3) deposit money to protect the Surety from further liability and loss relative to the Bonds upon demand.

**1. *The Indemnitors' Duty to Indemnify/Reimburse "Loss" Incurred***

The Indemnity Agreement jointly and severally obligates the Indemnitors to indemnify/reimburse the Surety in relation to any liability or loss it incurs in relation to the Bonds and grants the Surety wide discretion in relation to the settlement and/or defense of claims under the Bonds. Paragraph 2 of the Indemnity Agreement entitled "INDEMNITY" provides, in pertinent part, as follows:

> **Indemnitors shall exonerate, indemnify, and hold Surety harmless from any and all liability and Loss, sustained or incurred, arising from or related to: (a) any Bond, (b) any Claim, (c) any Indemnitor failing to timely and completely perform or comply with this Agreement, (d) Surety enforcing this Agreement or (e) any act of Surety to protect or procure any of Surety's rights, protect or preserve any of Surety's interests, or to avoid, or lessen Surety's liability or alleged liability.** The liability of Indemnitors to Surety under this Agreement includes all Claims made on Surety, all payments made, Loss incurred, and all actions taken by Surety under the Good Faith belief that Surety is, would be or was liable for the amounts paid or the actions taken, or that it was necessary or expedient to make such payments or take such actions, whether or not such liability, necessity or expediency existed. **Indemnitors shall promptly; <u>upon demand</u>, make payment to Surety <u>as soon as liability or Loss exists</u>, whether or not Surety has made any payment.** An itemized statement of Loss, sworn to by any officer of Surety, or the voucher or other evidence of any payment, shall be *prima facie* evidence of the fact, amount and extent of the liability of Indemnitors for such Loss.

(Emphasis added).

The Indemnity Agreement defines "Loss" as "all premiums due to Surety and **any and all liability, loss, Claims, damages, court costs and expenses, attorneys' fees . . . consultant fees, and all other costs and expenses**, including but not limited to any additional or extra-contractual damages arising from Surety's Settlement of any Claim." (Emphasis added). Here, the Surety has already incurred over $3,728,324.17 in "Loss," which amount primarily includes the attorneys' fees, costs, and expenses of its own counsel, the fees, costs, and expenses paid to the Principal's counsel, and the $600,000 settlement payment made to H&H Electric, Inc. in connection with its Payment Bond claim. The Indemnitors must fully reimburse the Surety for these amounts, and their liability will only increase if the Surety is forced to make additional demands or file suit to enforce the Indemnity Agreement. Therefore, the Surety demands that the Indemnitors remit payment in the amount of $3,728,324.17 by June 19, 2026 as reimbursement for its losses, costs, and expenses.

**2.** ***The Indemnitors' Duty to Provide Access to Financial Records***

The Surety's demand for access to the Indemnitors' books, records, and accounts is a necessary component of the Surety's ongoing investigation and assessment of exposure in relation to the Bonds. Consequently, Paragraph 11 of the Indemnity Agreement entitled "FINANCIAL STATEMENTS, BOOKS AND RECORDS" grants the Surety the right to access this information by providing as follows:

> **Indemnitors shall promptly provide Surety with <u>any and all information and documentation concerning the business or financial situation of any Indemnitor</u> or any subsidiary, affiliate or Related Entity of any Indemnitor, as requested by Surety. Indemnitors shall furnish on demand, and Surety shall have the right to access, examine and copy the books, records and accounts of Indemnitors and of any entity under the control of any Indemnitor, at no cost to Surety.** Indemnitors authorize any entity in which funds of any Indemnitor may be deposited to furnish to Surety a statement of the amount of such deposits as of the date requested. Indemnitors authorize any and all lenders, obligees, subcontractors, suppliers, accountants, other insurers, and other persons or entities to furnish to Surety any information requested by Surety, including but not limited to the performance of obligations under any Bond or Bonded Contract and payments related to any such Bond or Bonded Contract.

(Emphasis added). The Indemnitors have materially breached this provision by failing to produce financial records in response to the Surety's requests. Without access to the Indemnitors' books, records, and accounts, the Surety is unable to fully assess the Indemnitors' ability to satisfy their indemnity, collateral, and other obligations to the Surety under the Indemnity Agreement. As such, the Surety demands that the Indemnitors comply with their obligations by furnishing documents evidencing their current financial condition, including, but not limited to, tax returns and audited financial statements by June 19, 2026.

3. ***The Indemnitor's Duty to Place the Surety in Funds Upon Demand***

The Indemnity Agreement expressly obligates the Indemnitors to deposit money to protect the Surety from "Loss" relative to the Bonds. In this regard, Paragraph 4 of the Indemnity Agreement entitled "PLACE IN FUNDS" provides as follows:

> **Indemnitors agree to promptly deposit with Surety, on demand, an amount of money that Surety determines is sufficient to fund any liability or Loss. Such funds may be used by Surety to pay Loss or may be held by Surety as collateral against potential future Loss.** Any remaining funds held by Surety after payment of all sums due to Surety under this Agreement shall be returned upon the complete release and/or discharge of Surety's liability under all Bonds.

(Emphasis added).

Currently, the Surety anticipates that its potential "Loss" relative to the Bonds totals $17,000,000.00 due to USACE's termination of the Principal, the Surety's need to enforce its rights under the Indemnity Agreement, and any litigation in relation thereto, among other circumstances. Accordingly, the Surety demands that $17,000,000.00 be deposited with the Surety, no later than June 19, 2026, as protection against future "Loss."

**Conclusion**

Pursuant to the terms of the Indemnity Agreement, and without prejudice to its rights, the Surety demands that the Indemnitors (1) immediately remit payment in the amount of $3,728,324.17 to the Surety in satisfaction of the Indemnitors' current indemnity obligations, (2) provide independently verifiable financial records, and (3) deposit $17,000,000.00 in cash or other satisfactory collateral with the Surety no later than June 19, 2026.

Should the Indemnitors fail to comply with this demand, the Surety will take such steps as may be necessary to enforce the Indemnity Agreement and pursue such other rights and remedies against the Indemnitors to which it is or may be entitled.

Please contact me if you wish to discuss this demand further. In the interim, the Surety continues to reserve all rights, remedies, and defenses, under the Indemnity Agreement, the Bonds, at law, in equity, or otherwise.

Sincerely,

MANIER & HEROD,
A Tennessee Professional Corporation

Catherine Farone

Catherine C. Farone

Enclosures

cc: Stephen Stachowski (via email)
Tina Kocke (via email)
Kathy C. So (via email)

# EXHIBIT 1

ZURICH

# General Indemnity Agreement

THIS GENERAL INDEMNITY AGREEMENT ("Agreement"), dated this **18th** day of **August**, **2014** by:

| |
|---|
| **Huffman Construction, LLC, 1450 Rowe Parkway, Poplar Bluff, MO 63901, a Missouri LLC** |
| **James Keith Huffman, 2050 County Road 525, Williamsville, MO 63967** |
| All new Indemnitors added to this Agreement by rider |

(each an "Indemnitor" and all of the above individually and collectively "Indemnitors") in favor of ZURICH AMERICAN INSURANCE COMPANY and its subsidiaries, affiliates and associated companies in any jurisdiction, including but not limited to FIDELITY AND DEPOSIT COMPANY OF MARYLAND, COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY and ZURICH INSURANCE GROUP LTD, their respective successors and assigns (individually and collectively "Surety") with respect to any bond, undertaking, and/or obligation of suretyship or guarantee executed, provided or procured (herein "issued") by Surety (whether as surety, co-surety, reinsurer or otherwise) in the name of or on behalf of any Indemnitor, any Related Entity, any other entity on request in accordance with this Agreement, or any combination thereof, whether issued prior to or after the execution of this Agreement, and all renewals, extensions, modifications and substitutions of bonds (collectively "Bonds" and each individually a "Bond"). This Agreement shall be liberally construed so as to fully protect, exonerate, indemnify and hold Surety harmless from all liability and Loss.

As an inducement to Surety to issue or refrain from cancelling Bonds, Indemnitors represent and agree for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, as follows:

1. **PREMIUMS**: Indemnitors shall promptly pay all premiums and charges of Surety for Bonds, at the current rate charged by Surety, until Surety has been provided satisfactory evidence, in its sole discretion, that it has been fully released and/or discharged from liability under such Bonds.

2. **INDEMNITY**: Indemnitors shall exonerate, indemnify, and hold Surety harmless from any and all liability and Loss, sustained or incurred, arising from or related to: (a) any Bond, (b) any Claim, (c) any Indemnitor failing to timely and completely perform or comply with this Agreement, (d) Surety enforcing this Agreement or (e) any act of Surety to protect or procure any of Surety's rights, protect or preserve any of Surety's interests, or to avoid, or lessen Surety's liability or alleged liability. The liability of Indemnitors to Surety under this Agreement includes all Claims made on Surety, all payments made, Loss incurred, and all actions taken by Surety under the Good Faith belief that Surety is, would be or was liable for the amounts paid or the actions taken, or that it was necessary or expedient to make such payments or take such actions, whether or not such liability, necessity or expediency existed. Indemnitors shall promptly, upon demand, make payment to Surety as soon as liability or Loss exists, whether or not Surety has made any payment. An itemized statement of Loss, sworn to by any officer of Surety, or the voucher or other evidence of any payment, shall be *prima facie* evidence of the fact, amount and extent of the liability of Indemnitors for such Loss. Indemnitors shall promptly, upon demand, procure the full and complete discharge of Surety from all Bonds and all liability in connection with such Bonds. If Indemnitors are unable to obtain discharge of any or all such Bonds within the time demanded, Indemnitors shall promptly deposit with Surety an amount of money that Surety determines is sufficient to collateralize or pay any outstanding bonded obligations.

3. **SURETY'S RIGHT TO PERFORM, SETTLE AND/OR MODIFY:** Surety shall have the absolute and unconditional right and is authorized but not required to: (a) adjust, pay, perform, decline to perform, compromise, settle, deny, litigate or otherwise resolve any Claim and/or any claim, counterclaim, defense or setoff held by or made against any Indemnitor, Principal or other entity and/or to take any action to protect any rights of Surety or to preserve or protect Surety's interests, or to avoid or lessen any alleged liability (hereinafter "Settlement"); and (b) modify, consent to or decline to consent to modification of any Bond and/or Bonded Contract, and/or to take, consent to or decline to consent to any assignment (hereinafter "Modification"). Any Settlement and/or Modification by Surety shall be final, binding and conclusive upon Indemnitors. Indemnitors shall remain bound under this Agreement for all Loss even though any such Settlement or Modification by Surety does or might substantially increase the liability of Indemnitors.

4. **PLACE IN FUNDS**: Indemnitors agree to promptly deposit with Surety, on demand, an amount of money that Surety determines is sufficient to fund any liability or Loss. Such funds may be used by Surety to pay Loss or may be held by Surety as collateral against potential future Loss. Any remaining funds held by Surety after payment of all sums due to Surety under this Agreement shall be returned upon the complete release and/or discharge of Surety's liability under all Bonds.

5. **PLEDGE AND ASSIGNMENT OF COLLATERAL**: Indemnitors pledge, assign, transfer and set over to Surety the Collateral, as collateral to secure the obligations in this Agreement, whether incurred before or after the execution of this Agreement, including a license to use the Collateral, without cost, to perform or discharge Surety's obligations under any Bond or Bonded Contract. This pledge and assignment becomes effective on the date of this Agreement, or the earliest date allowable by law.

6. **TRUST FUNDS**: All sums due, to become due, or received by any Indemnitor or Principal for or on account of any Bonded Contract are trust funds in which Surety has an interest as a beneficiary of the trust whether in the possession of such Indemnitor or Principal or another. Such trust funds shall be held in trust for the benefit and payment of all obligations or Loss for which Surety may be liable under any Bond. Surety has the right, but not the obligation, to require that trust funds be placed in a dedicated trust fund account. This Agreement and declaration constitute notice of such trust.

7. **UNIFORM COMMERCIAL CODE**: This Agreement constitutes a security agreement to Surety in accordance with the Uniform Commercial Code or similar statute in any jurisdiction. Surety may file a photocopy or other reproduction of this Agreement as a financing statement or otherwise take any action or file any statement or documents to perfect the rights and interests granted in the Collateral or trust funds at any time.

8. **TAKEOVER**: If an Event of Default occurs, Surety shall have the right, in its sole discretion, and is authorized to take possession of any part or all of the work, materials and equipment under any Bonded Contract and any other materials or equipment which Surety deems necessary or proper to perform such Bonded Contract, and to perform or arrange for the performance of such Bonded Contract.

9. **ADVANCES AND FINANCING**: Surety is authorized to guarantee loans, to advance or lend money to any entity which Surety may see fit for the purpose of facilitating performance of obligations under any Bond or Bonded Contract. Indemnitors shall indemnify Surety for all such loans or advances and all Loss incurred by Surety relating to such loans and advances. Any failure to use the loans or advances, in whole or in part, for performance of obligations under such Bonds or Bonded Contracts shall not be a defense to Indemnitors' duty to indemnify Surety for such loans or advances. Surety has no obligation to provide financing or other support to any Principal or Indemnitor.

10. **BONDS FOR OTHER ENTITIES**: Indemnitors' obligations under this Agreement shall also apply to any Bond Surety issues for or on behalf of any Related Entity. "Related Entity" means: (a) any present or future, directly or indirectly owned subsidiary or affiliate of any Indemnitor; (b) any legal entity in which any Indemnitor has or acquires an ownership interest; and (c) any joint ventures, consortiums, teaming arrangements or any other business collaboration or economic enterprise ("Joint Venture") in which any Indemnitor is or was a member at the time the Bond was issued. Indemnitors' obligations under this Agreement shall also apply to any Bond Surety issues for or on behalf of any entity other than a Related Entity, on the written request of any Indemnitor.

11. **FINANCIAL STATEMENTS, BOOKS AND RECORDS**: Indemnitors shall promptly provide Surety with any and all information and documentation concerning the business or financial situation of any Indemnitor or any subsidiary, affiliate or Related Entity of any Indemnitor, as requested by Surety. Indemnitors shall furnish on demand, and Surety shall have the right to access, examine and copy the books, records and accounts of Indemnitors and of any entity under the control of any Indemnitor, at no cost to Surety. Indemnitors authorize any entity in which funds of any Indemnitor may be deposited to furnish to Surety a statement of the amount of such deposits as of the date requested. Indemnitors authorize any and all lenders, obligees, subcontractors, suppliers, accountants, other insurers, and other persons or entities to furnish to Surety any information requested by Surety, including but not limited to the performance of obligations under any Bond or Bonded Contract and payments related to any such Bond or Bonded Contract.

12. **ISSUANCE OF BONDS**: Surety does not guarantee the issuance or compliance of any Bond or any obligee's acceptance of any Bond issued. Surety has an absolute right to decline to issue or continue or renew any Bond and to cancel any Bond. If Surety issues a bid or proposal Bond or a written commitment to issue any Bond (each a "Bond Commitment"), Surety has an absolute right to decline to issue any Bond that may be required in connection with any award made under the proposal for which the Bond Commitment was given.

13. **WAIVER OF NOTICE**: Indemnitors waive notice of the issuance or cancellation of any Bond, any Settlement or Modification, and any act, fact or information concerning or affecting the rights and liabilities of Surety or the rights or liabilities of Indemnitors under the Bonds or this Agreement, notwithstanding any notice of any kind to which Principal and/or Indemnitors might otherwise have been or be entitled, and notwithstanding any defenses they might have been or be entitled to assert.

14. **OTHER SURETIES AS BENEFICIARIES**: If Surety procures the execution of any Bond by other sureties, or executes any Bond with co-sureties, or reinsures any portion of any Bond with reinsuring sureties, then all the terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and/or reinsuring sureties, including the right to bring an action for enforcement of this Agreement. Surety may furnish copies of any and all underwriting and Claim documentation to reinsurers and co-sureties, including statements, agreements, financial statements, and any information which Surety now has or may obtain in the future concerning (a) Principals and/or Indemnitors, (b) Related Entities of Principals and/or Indemnitors, and (c) other entities for which any Bond is requested pursuant to paragraph 10.

15. **SURETY'S ADDITIONAL RIGHTS**: This Agreement is in addition to and not in lieu of all other agreements of indemnity and any and all rights, powers, and remedies that Surety may have or acquire against Indemnitors or any other person or entity, whether by agreement, law or otherwise. Indemnitors acknowledge and agree that other indemnity, collateral, property and/or security may be required by Surety with respect to Bonds issued under this Agreement. Indemnitors shall remain bound under the terms of this Agreement even though Surety may from time to time (before or after the date of this Agreement): (a) accept, modify or release other agreements of indemnity with respect to any Bond; (b) accept, modify the indemnity of, or release any Indemnitor or any other person or entity; or (c) accept, release or subordinate any rights to collateral, real property, personal property or security. Indemnitors' obligations to Surety shall not be waived or reduced by any claim, setoff, defense, or other right or cause of action which Indemnitors and/or Surety may hold against any person or entity or which may be asserted by any Principal, Indemnitor or any other person or entity arising from or related to any Bonded Contract, any Bond, this Agreement, other agreements, by law or otherwise. Surety is subrogated to all rights, Claims, funds and receivables related to any Bonded Contract. Surety has the right to offset Loss on any Bonded Contract against proceeds, funds, real property or personal property under any other Bonded Contract or otherwise available to Surety under this Agreement. Surety's forbearance or failure to act to enforce any right shall not waive or diminish any of its rights, which rights may be enforced at any time in Surety's sole discretion.

16. **SURETY'S RIGHT TO SPECIFIC PERFORMANCE:** Indemnitors acknowledge that the failure of Indemnitors, collectively or individually, to perform or comply with any provision of this Agreement shall cause irreparable harm to Surety for which Surety has no adequate remedy at law. Indemnitors agree that Surety shall be entitled to injunctive relief and/or specific performance, and Indemnitors waive any claims or defenses to the contrary.

17. **POWER OF ATTORNEY**: Indemnitors irrevocably nominate, constitute, appoint and designate Surety, and any persons designated by Surety, as their attorney-in-fact, with the right, but not the obligation, to exercise all of the rights of Indemnitors pledged, assigned, transferred and set over to Surety in this Agreement, including, in the name of Indemnitors to make, execute, and deliver any and all assignments or documents deemed necessary and proper by Surety in order to exercise its rights, powers and remedies under this Agreement. Indemnitors ratify and confirm all acts taken by Surety and its designees as such attorney-in-fact and agree to protect and hold harmless Surety and its designees for all such acts.

18. **JOINT AND SEVERAL LIABILITY**: Indemnitors are jointly and severally liable to Surety under this Agreement. Surety may enforce this Agreement against any Indemnitor without joining any other Indemnitor, person or entity.

19. **CONTRIBUTION:** Indemnitors waive and subordinate all rights of indemnity, subrogation and contribution against each other and/or any Principal until all obligations to Surety under this Agreement, at law or in equity, have been satisfied in full.

20. **NOTICE TO SURETY:** Indemnitors shall notify Surety as soon as any Indemnitor becomes aware of the happening of any Event of Default. This notice, and any other notice to Surety, shall be addressed as follows: **Zurich Surety, Red Brook Corporate Center, 600 Red Brook Blvd., 4th Floor, Owings Mills, Maryland 21117, Attention: Vice President, Contract Surety**.

21. **LAWSUITS AND JURISDICTION**: Separate lawsuits may be brought under this Agreement as causes of action accrue, and the bringing of any lawsuit or the recovery of any judgment on any cause of action shall not prejudice or bar the bringing of other lawsuits, on the same or other causes of action, whether arising before or after any other lawsuit or cause of action. In any legal proceeding brought by or against Surety that in any way relates to this Agreement, each Indemnitor irrevocably and unconditionally submits to the jurisdiction, at Surety's sole option, of the Federal, state and local courts in which (a) any Indemnitor resides or has property, (b) any bonded obligation arises or is performed, or (c) any action may be brought against Surety. Indemnitors submit to the jurisdiction of such courts and waive and agree not to assert that they are not subject to the jurisdiction of any such court or that the jurisdiction and/or venue is in an inconvenient forum or otherwise improper.

22. **GOVERNING LAW FOR BONDED CONTRACTS OUTSIDE THE UNITED STATES:** Indemnitors agree that as to any legal action or proceeding related to any Bond issued in connection with any Bonded Contract to be performed outside the United States and its territories, this Agreement shall be governed by and interpreted under the laws of the State of New York, without regard to principles of conflicts of laws.

23. **EXECUTION AND CHANGES**: This Agreement may be executed in counterparts, all of which taken together shall constitute the Agreement. This Agreement shall be effective and immediately binding as to each Indemnitor when that Indemnitor executes this Agreement, regardless of whether any other party has executed the Agreement or fails to execute this Agreement. This Agreement shall only be changed or modified in writing.

24. **SEVERABILITY:** If any provision of this Agreement is found to be void or unenforceable as to an Indemnitor, the remainder of this Agreement shall nevertheless remain enforceable as to that Indemnitor; and the entire Agreement shall remain enforceable as to all other Indemnitors.

25. **TERMINATION:** Indemnitors' obligations and Surety's rights and remedies under this Agreement are continuing. Indemnitors acknowledge that their obligations under this Agreement remain for Bonds executed for entities that may be sold, dissolved, or otherwise disposed of in the future. This Agreement remains in effect until terminated and released by Surety. Any Indemnitor may terminate their participation in this Agreement with respect to future Bonds by sending written notice of termination to Surety at the address in Paragraph 20. Such termination shall be effective twenty (20) days from Surety's receipt of the notice ("Effective Date") and shall be effective only as to the Indemnitor providing such written notice. The notice of termination shall not terminate, modify, bar or discharge such notifying Indemnitor's obligations to Surety under this Agreement for: (a) Bonds issued prior to the Effective Date; (b) Bonds issued after the Effective Date where such Bonds are issued with respect to a Bond Commitment issued prior to the Effective Date; and (c) any Collateral or interest provided under this Agreement. The execution of any subsequent agreements of indemnity in favor of Surety by any Indemnitor shall not be construed as a novation, and this Agreement may only be terminated as provided herein.

26. **JURY WAIVER**: Indemnitors hereby knowingly and voluntarily waive and covenant that they will not assert any right to trial by jury in respect to any legal proceeding arising out of this Agreement.

27. **REPRESENTATIONS AND WARRANTIES**: Indemnitors each represent and warrant the following: (a) Each Indemnitor has a substantial, material, and/or beneficial interest in one or more Indemnitors or Principals obtaining Bonds or in Surety refraining from canceling any such Bond; (b) Each Indemnitor has the full power and authority to execute and deliver this Agreement and to perform all obligations in this Agreement; (c) All information provided to Surety by each Indemnitor prior to and after the execution of this Agreement is true, accurate and complete as of the time provided; and (d) Each right, power and remedy given to Surety, under any provision of this Agreement or otherwise, forms a material part of Surety's consideration for Bonds.

28. **WAIVER OF EXEMPTIONS:** Indemnitors waive all rights to claim any of their property, including their respective homesteads, as exempt from any levy, execution, sale or other legal process by Surety, unless such waiver is prohibited by law.

29. Intentionally Omitted.

30. **DEFINITIONS:**

**Bonded Contract** means any contract or other obligation referred to in any Bond or secured by any Bond.

**Change in Control** means any Principal or Indemnitor, without Surety's prior written consent: (a) assigning or selling any Bonded Contract; (b) undergoing a change in the beneficial ownership, directly or indirectly, of thirty percent (30%) or more of its voting stock (measured by voting power rather than number of shares) in one or more transactions, or any change in stock that results in a change of majority ownership; or (c) ceasing or threatening to cease to carry on business, or having any resolution passed or order made for its winding-up, liquidation or dissolution.

**Claim** or **Claims** means any notice, claim, demand, defense, counterclaim, setoff, lawsuit or proceeding or circumstance which may constitute, lead to or result in Loss, liability, or asserted liability in connection with any Bond, any Bonded Contract, or this Agreement.

**Collateral** means all right, title and interest of one or more Indemnitor in the following, wherever located, and whenever acquired or arising: (a) all Bonded Contracts; (b) all goods (including equipment, machinery, tools and materials), general intangibles, and inventory, to the extent not subject to a prior perfected security interest; (c) all subcontracts and purchase

orders arising under any Bonded Contract, and all surety bonds supporting such subcontracts and purchase orders; (d) all sums which are or may become payable in connection with any Bonded Contract and all other contracts in which any Indemnitor has an interest; (e) all intellectual property (including proprietary software) necessary or required to perform any Bonded Contract; (f) any facilities or plants necessary or required to perform any Bonded Contract; and (g) any real or personal property, the improvement of which is secured by any Bond.

**Event of Default** means any one or more of the following: (a) failure to timely perform or comply with any Bonded Contract or failure to timely pay invoices, bills or other indebtedness or to discharge liabilities under any Bonded Contract or Bond; (b) Breach of any Bond or declaration of default under any Bonded Contract (whether admitted or contested); (c) Surety setting any reserve against Loss or incurring Loss; (d) breach of or failure to timely comply with this Agreement; (e) any Principal or Indemnitor becoming the subject of any bankruptcy, insolvency, receivership, creditor assignment or trusteeship (whether voluntary or involuntary and whether insolvent or not); (f) any proceeding which deprives or impairs any Principal, Indemnitor and/or Surety of the use of any Collateral; (g) any individual Indemnitor becoming legally incompetent, imprisoned, convicted of a felony, or disappearing and being unable to be located; (h) a Change in Control; (i) any default, however described, which occurs under any document relating to the financial indebtedness of any Principal or Indemnitor, or any event as a result of which that financial indebtedness is or becomes capable of being rendered prematurely due and payable; or (j) any representation by any Principal or Indemnitor to Surety which was materially false or misleading when made.

**Good Faith** means, with respect to any act, exercise of discretion or omission by Surety, an absence of dishonesty, evil intent and actual malice toward Principal and Indemnitors.

**Loss** means all premiums due to Surety and any and all liability, loss, Claims, damages, court costs and expenses, attorneys' fees (including those of Surety), consultant fees, and all other costs and expenses, including but not limited to any additional or extra-contractual damages arising from Surety's Settlement of any Claim. Pre-judgment and post-judgment interest shall accrue from the date of any payment made by Surety with respect to any of the foregoing at the maximum default rate permitted by law.

**Principal** means any person or entity whose obligation is guaranteed by a Bond.

**SIGNATURE PAGE(S) TO FOLLOW**

**(The remainder of this page is intentionally left blank)**

## SIGNATURE INSTRUCTIONS

***All signatures should be notarized and dated.***

1. Corporation: an officer on the operational side (i.e. President, CEO, COO) and an officer on the finance side (i.e. Secretary, CFO, Treasurer) should sign;
2. Limited Liability Corporation (LLC): (a) if manager-managed, and if only one manager, the manager should sign; if more than one manager, two managers should sign (b) if member-managed, two members should sign unless there is only one member, then the one member should sign, or (c) if the LLC has appointed officers to manage the LLC, an officer on the operational side and an officer on the finance side should sign.
3. Limited Partnership (LP): (a) if only one general partner, the general partner should sign; (b) if more than one general partner, two general partners should sign.
4. Limited Liability Partnership (LLP): at least two partners should sign.
5. Trust: All of the Trustee(s) should sign.

**By signing below, each of the undersigned affirms to Surety that the undersigned is a duly authorized officer, manager, trustee, official or member of the entity for which the undersigned executes the foregoing Agreement. In such capacity the undersigned is familiar with all of the documents which establish the rights and which govern the affairs, power and authority of such entity including, to the extent applicable, the (1) certificate or articles of incorporation, (2) bylaws, (3) resolutions, (4) partnership, operating or limited liability agreements or (5) trust agreements of such entity. Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, the undersigned affirms that such entity has the power and authority to enter into such Agreement and that the undersigned is duly authorized to execute this Agreement on behalf of the entity and to bind the entity to its terms.**

**INDEMNITOR:**

**Huffman Construction, LLC**
**1450 Rowe Parkway, Poplar Bluff, MO 63901**

*(SEAL)*
*(if a corporation)*

NO SEAL

By: [signature]
James Keith Huffman
As **Managing Member of Huffman Construction, LLC**

Date: August 25, 2014

LAST 4 DIGITS OF TIN: 4639

**NOTARIAL ACKNOWLEDGEMENT**

STATE OF: Missouri COUNTY OF: Butler

The following instrument was acknowledged before me this 25th day of August, 2014 by:

[*name of signatory#1*] James Keith Huffman as [*title of signatory#1*] Managing Member of [*name of entity*] Huffman Construction, LLC, ("Entity"), on behalf of the Entity. He/She is personally known to me or has produced [*form of identification*] n/a as identification.

and by

[*name of signatory #2*] n/a as [*title of signatory#2*] n/a of the Entity on behalf of the Entity. He/She is personally known to me or has produced [*form of identification*] n/a as identification.

[signature]
Notary Public Signature

Printed Name Cheryl McClain

My commission expires: 3/25/16

August 25, 2014

Notary Seal:
CHERYL MCCLAIN
NOTARY PUBLIC - NOTARY SEAL
STATE OF MISSOURI
BUTLER COUNTY
COMMISSION # 12319222
MY COMMISSION EXPIRES: MARCH 25, 2016

**(The remainder of this page is intentionally left blank)**

**[SIGNATURE PAGE FOR INDIVIDUAL (PERSONAL) INDEMNITORS]**

| **SIGNATURE INSTRUCTIONS** | Each Indemnitor should sign and date their signature and provide all of the required information.<br><br>**Each signature should be witnessed and notarized**. |
|---|---|

**I/we have read this General Indemnity Agreement carefully. There are no separate agreements or understandings, either written or oral, that in any way lessen or change my/our obligations as set forth in this Agreement. In testimony hereof I/we have signed this Agreement on the day and year written below.**

*WITNESS:*

**INDEMNITOR James Keith Huffman,**
**2050 County Road 525, Williamsville, MO 63967**

Last four digits of Indemnitor's Social Security Number: 8230

Witness Signature [signature]
Print Name: Ann Eggers
Date: August 25, 2014

James Keith Huffman, Individually [signature]
Date: August 25, 2014

**NOTARIAL ACKNOWLEDGEMENT**

STATE OF: Missouri COUNTY OF: Butler

The following instrument was acknowledged before me this 25th day of August, 2014 by:

[*name of signatory*] James Keith Huffman. He/She is personally known to me or has produced [*form of identification*] n/a as identification.

My commission expires: 3/25/16

Notary Seal:

CHERYL MCCLAIN
NOTARY PUBLIC - NOTARY SEAL
STATE OF MISSOURI
BUTLER COUNTY
COMMISSION # 12319222
MY COMMISSION EXPIRES: MARCH 25, 2016

Notary Public Signature [signature]

August 25, 2014

Printed Name Cheryl McClain

***(The remainder of this page intentionally left blank)***

# EXHIBIT 2

# TOLLING AGREEMENT

This Tolling Agreement (this "Agreement") is made and entered into this 27th day of February, 2025 (the "Effective Date"), by and among Zurich American Insurance Company, Fidelity and Deposit Company of Maryland (collectively, "Surety"), Huffman Construction, LLC, and James Keith Huffman (collectively, the "Indemnitors") (Surety and the Indemnitors collectively, the "Parties").

**WITNESSETH:**

**WHEREAS**, the Indemnitors executed a General Indemnity Agreement, dated August 18, 2014 (the "Indemnity Agreement"), in favor of Surety as inducement for Surety to issue bonds on behalf of Huffman Construction, LLC (the "Principal").

**WHEREAS**, in reliance on the covenants and conditions of the Indemnity Agreement, Surety issued certain bonds on behalf of Principal (all bonds issued by Surety on behalf of Principal collectively, the "Bonds") including: a Performance Bond and a Payment Bond, each bearing No. 09127560, pertaining to a U.S. Army Corps of Engineers ("USACE") project known as the Grand Prairie Pump Station, located in DeValls Bluff, Arkansas (the "Project").

**WHEREAS**, USACE terminated Principal's prime contract for the Project on March 31, 2020, and made demands to the Surety under the Performance Bond. Principal and USACE are currently litigating their disputes in the Armed Services Board of Contract Appeals (the "USACE Case"). Surety remains exposed to liability and loss under the Performance Bond as that dispute remains pending.

**WHEREAS**, Surety has incurred and continues to face exposure to incurring further losses, damages, court costs, expenses, and fees (collectively the "Surety Loss") arising under and in relation to the Bonds, including the USACE Case.

**WHEREAS**, Surety asserts that it is entitled to reimbursement from the Indemnitors for the Surety Loss under Bonds through the Indemnity Agreements along with any and all legal, contractual or equitable claims, rights, or causes of action which Surety may have or subsequently acquire against any or all of the Indemnitors (together, with all actions and causes of action for reimbursement of the Surety Loss, the "Indemnity Claims").

**WHEREAS**, the Parties desire to toll the running of any limitations period under the Indemnity Agreements or at law, as applicable, until liquidation of the Surety Loss and/or conclusion of the USACE Case, as more fully set forth in this Agreement.

**NOW, THEREFORE,** in consideration of these premises and other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. Acknowledgment and Reaffirmation of Indemnity Obligations. The Indemnitors hereby acknowledge and reaffirm their obligations to Surety under the Indemnity Agreement and the Bonds, and further acknowledge, reaffirm and agree that nothing contained herein nor any action taken by Surety pursuant hereto will in any way waive, alter, amend or modify or limit their obligations to Surety under the Indemnity Agreement or the Bonds or under any written documents executed by the Indemnitors in favor of Surety, it being expressly acknowledged and agreed by the Indemnitors that the rights provided hereunder are in addition to and not in lieu of said rights and remedies. Furthermore, nothing in this Agreement shall be deemed a waiver of Surety's equitable rights and interests including, without limitation, Surety's equitable subrogation rights. Surety reserves all rights, remedies, and defenses, at law and in equity including, without limitation, all rights under the Indemnity Agreement and the Bonds. Notwithstanding the foregoing, Surety acknowledges that this Tolling Agreement is not intended to waive Indemnitors' rights and defenses, and that Indemnitors expressly reserve all rights and defenses, at law and in equity, and that the sole purpose of this Agreement is to toll the running of any limitations period under the Indemnity Agreement or at law, as applicable, until liquidation of the Surety Loss and/or conclusion of the USACE Case, as more fully set forth in this Agreement. Otherwise, the Indemnity Agreement remains in full force and effect.

2. Forbearance Agreement. Surety shall forbear and refrain from filing an immediate action against the Indemnitors under the Indemnity Agreement or otherwise relating to the Indemnity Claims.

3. Tolling Agreement. The Parties agree that the limitations period applicable to Surety's claims against the Indemnitors including, without limitation, the Indemnity Claims, and any equitable defenses relating thereto, shall be tolled from the Effective Date of this Agreement until forty-five (45) days after the Expiration Date of this Agreement in accordance with Paragraph 8. If Surety brings a legal action against the Indemnitors (or any of them) arising from or relating to the Indemnity Claims at any time prior to forty-five (45) days from the Expiration Date, the Indemnitors shall not assert the statute of limitations, any limitations period provided in the Indemnity Agreement or any equitable defenses relating thereto as a defense to the Indemnity Claims, to the extent that the Indemnity Claims asserted would have been timely filed under the applicable limitations period if Surety had asserted such Indemnity Claims as of the Effective Date of this Agreement. For the avoidance of doubt, any legal action commenced by Surety against the Indemnitors (or any of them) filed prior to forty-five (45) days after the Expiration Date will be treated as if filed on the Effective Date of this Agreement.

4. Duty to Cooperate. The Parties agree to fully cooperate and to execute any and all other documents that may be necessary or appropriate to effectuate the terms and intent of this agreement.

5. Consideration. The forbearance from bringing immediate suit and the tolling and abeyance of the Indemnity Claims, however limited or temporary, constitute adequate

consideration for the execution and delivery of this Agreement. The Parties agree that the provisions of this Agreement are reasonable in light of the prevailing circumstances and this Agreement serves the mutual interest of the parties in allowing Surety to preserve the Indemnity Claims and to hopefully avoid litigation among the Parties.

8. Expiration of this Agreement. Unless mutually agreed upon in writing by all Parties to this Agreement, this Agreement shall expire on December 31, 2025 (the "Expiration Date"); provided, however, nothing prevents Surety from filing a lawsuit or other action against one or more of the Indemnitors prior to the Expiration Date.

9. Counterparts. This Agreement may be executed by the Parties independently in any number of counterparts, all of which together will constitute but one and the same instrument, which is valid and effective as if all parties had executed the same counterpart. Furthermore, (a) this Agreement may be transmitted between the Parties by facsimile machine or electronic mail, (b) this Agreement may be executed by facsimile or scan and electronically mailed signatures, and (c) facsimile or scan and electronically mailed signature shall have the effect of an original signature relative to this Agreement.

10. Modification. This Agreement may be modified only by written instrument executed by the Parties.

11. Execution by Individual Indemnitors. This Agreement and the Tolling Agreement in Paragraph 3 above shall immediately become effective and binding on each individual Indemnitor upon execution of this Agreement by that Indemnitor. If one or more Indemnitor fails or refuses to execute this Agreement it shall, nonetheless, be fully enforceable and binding on the Indemnitors that do execute this Agreement.

12. Governing Law. This Agreement, and any rights, remedies, or obligations provided for hereunder, shall be interpreted and enforced in accordance with the laws of the State of Arkansas.

**IN WITNESS THEREOF**, the Parties hereto have executed and delivered this Agreement on the date first shown above.

**ZURICH AMERICAN INSURANCE COMPANY**

By: [signature] Stephen J. Stachowski

Its: Representative

STATE OF NY
COUNTY OF ERIE

I certify that Stephen Stachowski of Zurich American Insurance Company has signed the foregoing Agreement and who is known to me, acknowledged before me that, being informed of the contents of the Agreement, he/she, as such officer with full authority, executed the same voluntarily, for and as the act of said corporation.

Given under my hand this the 3rd day of March, 2025.

Notary of the Public:
My commission expires: 8/20/2027.

JENNIFER SMITH
Notary Public - State of New York
NO. 01SM6173230
Qualified in Erie County
My Commission Expires 8/20/2027

[signature]

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND**

By: [signature] Stephen J. Stachowski

Its: Representative

STATE OF NY
COUNTY OF ERIE

I certify that Stephen Stachowski of Fidelity and Deposit Company of Maryland has signed the foregoing Agreement and who is known to me, acknowledged before me that, being informed of the contents of the Agreement, he/she, as such officer with full authority, executed the same voluntarily, for and as the act of said corporation.

Given under my hand this the 3rd day of March, 2025.

Notary of the Public:
My commission expires: 8/20/2027.

JENNIFER SMITH
Notary Public - State of New York
NO. 01SM6173230
Qualified in Erie County
My Commission Expires 8/20/2027

[signature]

**JAMES KEITH HUFFMAN**

STATE OF Missouri
COUNTY OF Butler

Personally appeared James Keith Huffman, who, being duly sworn, did sign the foregoing instrument on this 27th day of February, 2025.

Notary Public:
My commission expires 12/05/2027.

ANN EGGERS
My Commission Expires 12-05-2027
NOTARY SEAL
Butler County
Commission # 23589473
NOTARY PUBLIC - STATE OF MISSOURI

**HUFFMAN CONSTRUCTION, LLC**

By: James Keith Huffman

Its: Owner

STATE OF Missouri
COUNTY OF Butler

I certify that James Keith Huffman of Huffman Construction, LLC has signed the foregoing Agreement and who is known to me, acknowledged before me that, being informed of the contents of the Agreement, he/she, as such officer with full authority, executed the same voluntarily, for and as the act of said corporation.

Given under my hand this the 27th day of February, 2025.

Notary of the Public:
My commission expires: 12/05/2027

ANN EGGERS
My Commission Expires 12-05-2027
NOTARY SEAL
Butler County
Commission # 23589473
NOTARY PUBLIC - STATE OF MISSOURI